United States District Court For
The Northern District Of California

FILED
JUN 10 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

Roy'land Rice,
Defendant,

V.

United States
Of America,
Plaintiff.

No. CR-12-00818 PJH

Addendum And
Final Sentencing
Memorandum
Rule 32. 3 (f)



   Comes Now Defendant, Roy'land Rice,
Pro Se, here inafter, Defendant, with
a final submission and addendum
in the form of a "Sentencing Memor-
andum", augmenting his initial
draft and adding additional informa-
tion and case law in support of his
legal position and sentencing param-
eters.

-1-

Defendant states for the record that he has not filed this motion, nor any other in an attempt to delay his sentencing, or in any other manner to vex the court, or waste its resources.

It is only defendant's desire to have the U.S.S.G., applied in his case according to the Congressional intent and an educated understanding of the application of the guidelines.

## U.S.S.G. § 4B1.1 (Career Offender)

Where the AUSA, B. Lewis, asserts that defendant fits the criterion for a sentence enhancement pursuant to § 4B1.1, Defendant asserts that AUSA, Lewis, insistance is simply feign obstinance, or a stubborn obtuseness where the language of the Guidelines don't support his position.

# 4B1.1 Career Offender

Where the provisions of Section 4B1.1, outline the criteria at (a) and (b), for the Career offender enhancement, it does not end at Section (b), as with most of the U.S.S.G's, it has multiple sections, provisions, commentary, and application notes, which must be read "and" applied in tandem with other U.S.S.G's.

I. e. "Application Note 1." in the Commentary offers a perfect example.

The Application Note, describes "crime of Violence" "Controlled substance offense" and "two prior felony convictions," at § 4B1.2.

However, further reading of 4B1.1, refers one to §§ 4A1.1 (Criminal History Category), and 4A1.2 (Definitions and Instructions for Computing Criminal History.)

Proceeding to § 4B1.2, Definitions of Terms used in Section 4B1.1, Here §4B1-.2, Clarifies the meaning given the term "Crime of Violence" "Controlled Substance offense" and "two prior felony convictions."

Further reading of U.S.S.G. § 4B1.2 "Application Notes," 2 and 3, expressly provides clarification of "crimes" of violence, or "controlled substance offenses," for the purposes of § 4B1.1 (career offender).

However, Section 3 "again" referes to the provisions of § 4A1.2 (Definitions and Instructions for Completing Criminal History.) Which are applicable to the Counting of Convictions under § 4B1.1. "Counting" being the opretive word.

This reference to § 4A1.2, however is Significant.

Here the significance of § 4A1.2, particularly Section (e) "Applicable Time periods", at (1) and (2), Must be read

in tandem with the commentary of 4A1.1 (a), 4A1.2 (e), 4B1.2, and Applied accordingly, per the Commentary and Application Notes, provided in each distinct Guideline, least wise the Guidlines become void of logic.

See, United States v. Johnson, (2011 CA-8 Ark.) 648 F.3d 940 —— if U.S.S.G § 4A1.2 (e) prohibited use of remote sentence for purposes of determining his criminal History Category under USSG § 4A1.1, district court ... See Forsberg v. Warden FCI Fort Dix, (2010 DC NJ) 2010 U.S. Dist Lexis 45848.

The above cases make it apparent the validity of the time provisions set forth in §§ 4A1.1 (a) and 4A1.2(e).

## Crimes Of Violence

## 4B1.2 (a) and (b)

Define the terms used in section

-5-

<u>4B1.1</u> "Career Offender."

Here the term "Crime of Violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year that —

(1) has as a element the <u>use</u>, <u>attempted use</u>, or <u>threatened use</u> of physical force against the person of another, or

(2) is burgury of a dwelling arson, or extortion, involves <u>use</u> of explosives, or otherwise involves conduct that presents a serious potential risk of physcial injury to another.

Yet again, at Section 3, of <u>4B1.2</u>, instructions are given for § <u>4A1.2</u>, which is applicable to the "<u>Counting</u>" of convictions under <u>4B1.1</u> "<u>Yet again</u>."

<u>Crime Of Violence "Defined"</u>

District Courts have repeatedly re-

- 6 -

1  fused to apply the Career Offender enh-
2  ancement in cases involving § 2113(a),
3  where the "conduct of which the defendant
4  was convicted" was the focus of inquiry.
5  See <u>United States</u> v. <u>Sam</u>, 467 F.3d
6  857 (2006); <u>United States</u> v. <u>Dentler</u>,
7  (2007 CA Tex.5) 492 F.3d 306, ——
8
9         Defendant's 240-month sentence
10 as a career offender was vacated bec-
11 ause it was imposed as result of in-
12 correct application of <u>U.S.S.G § 4B1-2</u>,
13 in that . . . .
14         See., <u>United States</u> v. <u>Swanson</u>
15 (2007 W.D. Tex.) 502 F. Supp. 2d 563.;
16 See <u>United States</u> v. <u>Smallenberger</u> (2007
17 CA9 Cal.) 481 F.3d 1187,— Government
18 failed to meet its burden of demonstr-
19 ating that defendant qualified as a
20 career offender . . . following his guilty
21 plea conviction for unarmed bank robb-
22 ery in violation of 18 U.S.C. § § 2113(a).
23
24
25 See, <u>U.S.</u> v. <u>Krejcarek</u>, 453 F.3d 1290 (10
26 th Cir 2006). for crime of violence, given
27 that the conduct necessary to sustain
28

1  the conviction presented a serious potent-
2  ial risk of physical injury to another.
3  See; <u>U.S. v. Houston</u>, 456 F.3d 1328
4  (11th Cir 2006). Whether defendants pri-
5
6  or convictions were crimes of violence,
7  as required to support increase in def-
8  endant's offense level and criminal
9  history was question of law to be dec-
10 ided by court, and not question of fact
11 to be found by jury.
12

13 To determine whether a particular offense
14 falls within the "otherwise" clause of
15 definition of "crime of violence", for pur-
16 poses of career offender provision of
17 Sentencing Guidelines, Court of Appeals,
18 follows a "categorical approach", asking
19 whether the conduct encompassed by
20 the elements of the offense, in the
21 ordinary case, presents a serious pot-
22 ential risk of injury to another. <u>U.S.</u>
23 <u>S.G. §§ 4B1.1, 4B1.2, 18 U.S.C.A. U.S.</u>
24 <u>v. Ross</u>, 613 F.3d 805 (8th Cir. 2010.
25
26
27
28 Where robbery is defined as an offense

-8-

1  Containing at least the elements of mis-
2  appropriation of property under circum-
3  stances involving immediate danger to
4  person. As such a crime is a crime of
5  Violence under U.S. Sentencing Guide-
6  lines Manual, § 4B1.2 (a) (2), "Only"
7  if, from the face of the indictment, the
8  crime charged or conduct charged presen-
9  
10 ts a serious potential risk of injury to
11 a person. United States v. Swanson,
12 502 F. Supp. 2d 563 (2007).
13
14 To analyze "whether a particular offense
15 falls within the "otherwise" clause the
16 Supreme Court ask whether the conduct
17 encompassed by the elements of the
18 offense, also in the ordinary case, pre-
19 sents a serious potential risk of injury
20 to another". James v. United States, 550
21 U.S. 192 2008, 127 S.ct 1586, 167 L.Ed 2d
22 532 (2007). See United States v Spudich,
23 510 F. 3d 834, 838 (8th Cir. 2008).
24
25
26 When a statute of conviction encomp-
27 asses multiple generic crimes, and when
28

-9-

1 some qualify as "crimes of violence"
2 while others do not, we may apply a
3 "modified Category-rical approach" to
4 determine which portion of the statute was
5 the basis for conviction. Johnson v.
6 United States, 130 S.Ct 1265, 1273, 176
7 L.Ed 2d 1 (2010); United States v. Fur-
8 queron, 605 F.3d 612, 614 (8th Cir 2010).
9

10
11 <u>Criminal History Category</u>
12
13 Where the U.S.P.O. M. Nero, did assi-
14 gn defendant 6 criminal history points,
15 plus two pursuant to §4A1.1(d) for a
16 total of 8 points. Defendant asserts
17 that 3 points must be deducted for
18 the 1990 conviction. This would leave
19 a total of 5 criminal History points,
20 which rightly place defendant's guide-
21 line at 41-51 months.
22
23
24 Defendant asserts that there exist no
25 language, nor is there Commentary contained
26 within the U.S.S.G's from Section 1B1.3,
27 - 7B1.3, et.seq. Which informs nor
28

-10-

1  directs one to ignore the Application
2  of § 4A1.1 and 4A1.2(e), i.e., Applic-
3  able Time Periods.

5  <u>Mitigating Circumstances</u>

7     Defendant was born in the rural
8  south of 1950's Alabama, he and his
9  other 4 siblings were all born at home
10 by Mrs. Crenshaw, a neighbor and local
11 midwife, Defendant had some early
12 complications, Reumatic fever, severe ec-
13 zema, and twice being accidentally burn-
14 ed, both hands and face, and left upper leg.

17    Defendant's Father, Aquella Viez-Rice,
18 was a Cuban National, who came to
19 America in 1946, to purchase a car.
20 Meet defendant's Mother, and never re-
21 turned to Cuba, married my Mother in
22 1948.

25    My Father joined the Armed Services
26 (Army) in 1950, and died in combat
27 in the Phillipines in 1953, I only have

-11-

vauge memories of him. We were poor,
poverty was a way of life. This was exa-
cerbated by the Governments refusal
to acknowledge for 13 years my Father's
contribution of his life to the war.

As a child I remember the Montgomery
bus boycott, I remember walking and
being cold, I also remember having to
ride "only" on the back of the bus.

I remember the Jim Crow south, the
fear on the faces of grown men and
women as they spoke of the Klu-Kluxers,
(KKK), I remember the bombing of
the church, and how everyone seemed
to know at least one of the victims.
I remember the racism.

Moving to California, I/we experien-
ced a new type of racism. I later called
it the "covert type".

I remember, how our clothes and
shoes, were the objects of laughter, and

1  Our speech as well.

2

3     I remember the racist school nurse
4  declaring that I and my two brothers
5  had Ring worm in our head, and me
6  having to don a white stocking cap, for
7  over a year before I could enter the school
8  yard, and if I forgot or lost it, I was
9  sent home straight forward.
10

11

12     Where the doctor had sent a letter
13  to the school, explaining to the Nurse
14  that there was no Ringworm, only dry
15  scalp, because we washed our heads
16  with bath soap. I didn't even know
17  what shampoo was.
18

19

20     The ostracism, drove me mad, until
21  I refused to go to school. Finally the
22  doctor came to the school and pulled
23  rank on the nurse. Finally I was able
24  to ditch the white stocking cap., Damage
25  done.
26

27

28     Or when one day during recess

-13-

where all the kids were gathered around
the principal and she was inturn ask-
ing all what they wanted to be when
grew up. where I said I wanted to be
a doctor, the Principal, this 50 some-
thing year old white woman with lip-
stick and rouge, powder, was suddenly
laughing so hard she was bent double
with tears in her eyes.

Or in the fourth grade when I won
the spelling bee, the look of consternat-
ion and disappointment on the teachers
face, when I could spell better than
my two little native, blue eyed class-
mates. I won the spelling bee every
year after until the ninth grade.

Seeing the hurt and pain on my
Mothers face when she did not have
enough money, and had to choose bet-
ween buying food or paying the utilit-
ies, Or to see the tears on her face when
she could not afford new school clothes
for all.

For a while I wore my older brother's hand-me-downs. at first it bothered me, but my brother took excellent care of his clothes.

At age 8 I took an Oakland Tribune News paper route, I would rise at 5:30 AM each morning to deliver my papers, I never missed a day rain or shine in 8 years. That one dollar a day that I made helped.

I came from a loving home, My Mother refused to live in any housing projects. I was aware of things at a very young age and the unrelenting poverty made me ever more aware. I started buying my own clothes when I was in the third grade. I would cut some of my paper route customers grass, or wash their cars, clean their yards.

When my Mother passed I was 14 years old, I did not handel it well.

-15-

My younger brother Drake, was kidnapped the day of my Mothers funeral. I think some of my family fault me for Our Mothers death, See I introduced her to my step father. She died having my younger Sisters.

I was a single parent for 13 years, when my oldest son's Mother and I divorced, She came by my apartment one day with all of my sons' toys and clothing She said " I don't want him you take' him." I thought she was just joking. 2 years past before I really realized that I was a single dad. Its not easy being a single parent.

## The Crack Epidemic

Imagine that— one day you woke up and realized that almost every one that you knew (closely) and many that you only saw at a distance were engaged with something — so prevasive, so

-16-

diabolical, so insidious, that it had changed lifes landscape as you knew it. None of the old rules applied anymore.

Where were you? It was, as if your head had been in the sand. In a way it was, you refuse to see whats right in front of your eyes.

You went to work everyday, you read your kids bedtime stories, you tucked them in at night. You were in denial.

But the world had changed irrevocably. One day you caught your sons Mom and her girlfriends, smoking grimmies (crack rolled up in marijuana cigarette), you raised hell, Carolyn, was a square, a "good girl", that was one of the reasons you'd married her. You couldn't figure it out.

Your best friend, Thomas S. was smoking, all of your workers were using.

-17-

and would not show up for work, every one you meet it seemed was smoking, or trying to. Where you'd meet a woman, invariably she turned out to be a user. All of your old school friends were indulging, it seemed that everyone was doing it.

Where you were always called a square because you honored your Mother's wish, you didn't drink and take the pills and experiment with drugs, the other's your peers called you square ass.

But when curiousity finally got the best of you, when your need to understand a drug that had reached your lately square Carolyn, your kids mom, you just had to understand. You reasoned that just once wouldn't hurt, It wasn't like you were going to inject heroin.

So one evening you slip into

-18-

your garage, and you try it too, "Bang" you opend Pandoras box, Your life has never been the same.

Here Defendant wants the reader to know that at the time described above in 1988-89, he was living in North Berkeley, down the street from Alice Waters, That year defendant legitimately earned $90.000.00 dollars.

## A Chemical Warfare

It is Defendant's assertion that "Chemical Warfare", was/has been perpetrated on the Black Community, in an experiment whether purposeful, or for scientific, Social, or Socio-economic, regentrification, population control, or any one of a dozen reasons. The fact is that it worked! whatever the reson reason, it did destroy the Black Community as we knew it, Until today I am Ashame of my male blackness.

To date over 1.2 million deaths can be attributed to the affects of crack - cocaine, 99.99 percent of them black people. With twice that number of incarcerations. Not to mention the long term and residual social and medical effects.

Witness a generation of (crack babies), and the next generation mid-1990's babies, the "murderous" 'Z' generation the angry, hateful, killer ones, another generation lost.

Defendant asserts that this is the war that he has survived, whether by his own making or social assimulation, one cannot ignore that the war took place.

Defendant asserts that for years he blamed, and was angry with the government for not keeping so such a diabolical scourage from the shores of America, the Devil's very spawn.

-20-

Here Defendant does not attempt to manufacture an excuse, but mabey just mabey "he suffers some form of P.T.S syndrome, yet undiagnosed, an some form of curtural psychic displacement. Why must one always be viewed through the prism of the "Super Masculine meanial"?

Defendant ask the court to try and view the world from his perspective. Impossible, p but please try.

Defendant states that he can, and wants to contribute to society.

Respectfully Submitted

Royland ice
PRO SE

June 05, 2013

-21-

Certificate of service

Case Name:    Rice v. United States

Case No.:      CR-12-00818

I certify that a copy of the Addendum and Final Sentencing Memorandum Pursuant to Rule 32.3(f), and any attachments was served by U.S. Mail, on the persons listed below.

With the exception that the District Court's Copy contained an additional 10 pages of Sentencing Memorandum for the Hon. P. J. Hamilton.

| Name | Address | Date Served |
|---|---|---|
| AU.SA. B. Lewis, | 1301 Clay Street Suite 340 S Oakland CA 94612 | May 6, 2013 |
| Clerk of The Court U.S. Dist Court | "          " | May 6, 2013 |

Roz'lan Rice