Rogelio Hernandez
Reg.# 75255-011
Federal Correctional Inst.
P.O. Box 800, Herlong CA 96113
Pro Se

FILED

APR 3 0 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Cause No. 12-CR-00818

April 12, 2020

To:     Clerk Of The Court
        United States District Court
        Northern District Of California
        1301 Clay Street Oakland
        California 94612

Re:     Motion To Reduce Sentence
        Pursuant 3582(C)(1)(A)

Dear Clerk,

Petitioner apologizes for having to hand-write this motion. But because of the current health Crisis Petitioner had no other option. Petitioner respectfully ask this Court to construe his pleading pursuant to Haines v. Kerner, 404 U.S. 519, and to overlook any errors or Omissions.

Royland Rice
Reg. #75255-011
Federal Correctional Inst.
P.O. Box 800, Herlong, CA 96113
Pro Se

FILED

APR 30 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Cause No 12-CR 00818-PJH

In The United States District
Court Northern District Of
California

| Royland Rice,<br>Petitioner/Movant,<br><br>V.<br><br>United States Of America,<br>Plaintiff/Respondent. | Case No. 12-CR 008-18-PJH<br><br>Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(C)(1)(A) And Judicial Recommendation. |
| --- | --- |

To: The Honorable P. J. Hamilton,
United States District Court Judge

# Table Of Contents

Pages

Introduction . . . . . . . . . 2

A. The Court Has Jurisdiction To Grant Release For Extra-Ordinary And Compelling Reasons . . . . 3

B. The Relief Requested Here Is Consistent With Both The Text Of The Statute And The Commission's Policy Statement . . . . . . . . 5

1. Congress Did Not Limit Extra-Ordinary And Compelling Reasons To A Specific Enumer-ated Set Of Circumstances .. 6

2. The U.S. Sentencing Commission Has Not Limited "Extraordina-ry And Compelling Reasons" For Compassionate Release To Medical, Age-Related, Or Family Circumstances. ... 9

# Table Of Contents

3. Extra Ordinary And Compell-
ing Circumstances Warrant
A Reduction In Petitioner's
Sentence . . . . . . . 15

C. The Criteria For Reassess-
ing The Length Of Petit-
ioner's Sentence Weigh
Strongly In Favor Of
A Sentence Reduction.
. . . . . 21

D. Petitioner's Reasons For
Seeking A Reduction
. . . . . 24

D1. The First Step Act And
Its Impact On Petitioner's
Sentence . . . . . . . 27

Conclusion . . . . . 28

# Table OF Authorities

Cases                                    Page(s)

## Supreme Court

United States v. Booker,
543 U.S. 220, 245 (2005) . . . . . . . . . 12

Session v. Dimaya,
138 S.Ct at 1221 (2018) . . . . . . . 17

United States v. Davis,
139 S.Ct 2319 (2019)   . . . . . . . 17,18

Johnson v. United States
576 U.S. ___ 135 S.Ct 2551 (2015) . . 17,18,20

United States v. Beck,
No. 1:13 CR-186-6 2019 (M.D.NC. June 28) . . 18

United States v. Cantu,
No. CR-H89204, 2019 (S.D. Tex June 24 . . . 5,13,15

United States v. Cantu-Rivera,
No. CR-H89204, 2019 WL 2578272 (S.D. Tex-
                    June 24 2019) . . 5,16,20

United States v. Da-Cia chen,
127 F.3d 286, 291 (2nd Cir 1997 . . . 12

United States v. Frates
896 F.3d 93 (2018 CA 1st Cir) . . . 19,20

(1)

# Table Of Authorities

Cases                                              Page(s)

United States v. McGraw
   No. 2:02-CR00018, 2019 (S.D.Ind)....13

United States v. Piernianzi
   23 F.3d 670, 683 (2nd Cir. 1994..12

Shelby v. United States
   (9th Cir. 18-35515)        .........17

United States Code

18 U.S.C. § 924 (c) ............17, 18
18 U.S.C. § 2113 (a) ........2, 16, 19
18 U.S.C. § 3142(g) ...........21
18 U.S.C. § 3553(a) ...........21
18 U.S.C. § 1951(b)(1)..........18
18 U.S.C. § 3582 (C)(1)(A)..1,3,4,5,13,14,15,18
                     .........19, 20
18 U.S.C. § 3582(C) .....6,8,9,10, 13
28 U.S.C. § 994 (t). .........10

United States Sentencing Guidelines

U.S.S.G. § 1B1.13 .......11,13,15,16,21

Senate Statutes

Comprehensive Crime Control Act
              1994 ...... 3,4

# Table Of Authorities

Cases                                                    Pages

P.L. 98-473, 98 Stat. 1837, Oct 12, 1983 .. 4

P.L. 115-391, 132 Stat. 5194 (Dec. 18, 2018) 4

S. Rep. No. 98-225, at 5253 n. 74 (1983 . 6, 8

Amendment 798 (2016) . . . . 19, 20

Additional Cases

United States v. Simons
No. 07-CR 00874, 2019 WL 1760840
(E.D.N.Y. 2019) . . . . . . .   27

Boyland Rice
Reg. #75255-011
Federal Correctional Inst.
P.O. Box 800 Herlong, CA 96113
Pro Se

Cause No. 12-CR-00818

In The United States District
Court Northern District Of
California

| Boyland Rice, Petitioner/Movant, | Case No. 12-CR-00818- PJH |
|---|---|
| v. | Motion To Reduce Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A), And Judicial Recommendation |
| United States Of America, Plaintiff/Respondent. | |

To: The Honorable Phyllis Hamilton,
District Court Judge:

Petitioner Boyland Rice, pro se,
respectfully moves this Court for
an "Order" recommending that
Petitioner's crime be reduced to a
non-Violent-status, and for a red-
uction in his sentence, based
on the "extraordinary and compe-
lling reason(s)" discussed below,
pursuant to the recently amend-
ed 18 U.S.C. § 3582(c)(1)(A).

-1-

Petitioner would also respectfully request oral argument, (perhaps via-video conference) on this Motion.

## Introduction

Petitioner was sentenced in 2013 to a "Career Offender" enhanced sentence of 168 months following a plea of guilty to a single count indictment, charging him with a violation of 18 U.S.C. § 2113 (a), un-armed bank-robbery. Petitioner was sentenced as a "Career offender" where Petitioner did have "two" prior convictions for 2113(a) violations. Petitioner's projected release date is in 2026. (minus adjustments FSA)

The Court now has the authority to reduce Petitioner's sentence based on extraordinary and compelling circumstances. First, it has the jurisdiction to here this motion

---

1.

It must be noted that despite having been charged with at least 12 bank-robberies, in none of the incidents was any one harmed, threatened or enjured. Nor was there ever the use of a weapon.

-2-

because more than 30 days have
elapsed since Petitioner's submission
of a request to the Warden, and
the Director of the BOP, has not
filed a motion with this Court.
"Secondly", the changes to 18 U.S.C.
§ 3582 (c)(1)(A)(i), made by the
First Step Act, have finally vested
the Court with authority to decide
when extra ordinary and compell-
ing circumstances warrant a sen-
tence reduction. "Thirdly", as
this Court is already aware, the
circumstances presented here
cry-out for a sentence reduction.

## A.

### The Court Has Jurisdiction To Grant Release For Extraordinary And Compelling Reasons

Where the compassionate release
statute was first enacted as part
of the Comprehensive Crime Control
Act of 1984. It provided that a
district Court could not modify
a final term of imprisonment
except in four (4) situations, one
of which was the existence of
"extra ordinary and compelling

-3-

reasons" Warranting the reduction as determined by the sentencing Court. But, although the courts had the final decision-making authority over whether a sentence would be reduced, the statue imposed a gatekeeper — that authority could be invoked only upon a motion by the Director of the BOP. Without such a motion, sentencing Court's were powerless to reduce a prisoner's sentence, even if the Court concluded that extraordinary and compelling reasons warranted the reduction. 18 U.S.C. § 3582 (c)(1)(A). See also PL 98-473, 98 stat. 1837 (Oct 12, 1984).

That changed when Congress enacted the First Step Act, which amended § 3582(c)(1)(A). See P.L. 115-391, 132 stat 5194, at 3603 (Dec. 21, 2018). Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling reasons" in two circumstances: (i) if the Director of the BOP files a motion requesting such relief; or (ii) "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies

-4-

to appeal the BOP's failure to bring
a motion, or if 30 days have lap-
sed " from the receipt of such a
request by Warden of the defend-
ant's facility." Whichever is earlier.
18 U.S.C. § 3582 (c)(1)(A); See also
United States v. Cantu, No. 1:05-CR-
458-1, 2019 WL 2498923, at *3 (S.D.-
Tex. June 17, 2019) (" Under the new-
ly amended § 3582 (c)(1)(A) [the def-
endant] has standing to bring
this motion because more than
30 days elapsed between his red-
uction in-sentence request to the
Warden and a response."); United
States v. Cantu-Rivera, No. CR-H-
89264, 2019 WL 2578272, at *1 (S.D.-
Tex. June 24, 2019) " Petitioner's
" Petition ... meets the require-
ments of a lapse of 30 days from
the receipt by the Warden of Pet-
itioner's facility ... The Court there-
fore has the authority to address
Petitioner's Motion.")


                    B.


    The Relief Requested Here Is
Consistent With Both The Text
Of The Statute And The Commission's
Policy Statement.
                -5-

## 1. Congress Did Not Limit "Extraordinary And Compelling Reason" To A Specific Enumerated Set Of Circumstances

Congress did not define what would constitute an "Extraordinary and compelling reason" Warranting a reduction of sentence under 3582. (c). Indeed, the legislative history confirms that it intended to grant federal sentencing courts broad discretion to make those determinations on a case by case basis, and to reduce fundamentally unfair sentences where such reasons exist.

Congress's initial goal in passing the comprehensive crime control Act, was to abolish federal Parole and create a "Completely restructured guidelines sentencing system." S. Rep. No. 98 225, at 52, 53 n. 74 (1983). But with the elimination of Parole as a corrective measure in cases where early release is warranted), Congress recognized the need for an alternative review process. It therefore allowed for judicial reduction of certain sentences under § 3582(c):

"The committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would be included cases of severe illness, cases in which other extraordinary and compelling circumstances, justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defend-[ant] was convicted have been later amended to provide a shorter term of imprisonment."

Id. at 55-56 (emphasis added). Put differently, rather than having the Parole Commission review every federal sentence, Congress decided to let sentencing courts decide, in a far narrower band of cases presenting extraordinary and compelling circumstances, if "there is a justification for reducing a term of imprisonment" Id. at 56.

-7-

The situation listed in § 3582(c) were/are thus intended to serve as "safety valves for modification of sentences," enabling sentence reductions of sentences," enabling sentence reduction when justified by factors that previously couldhave been addressed through the (now abolished) parole system. Id. at 121.

This approach was intended to keep "the sentencing power in the judiciary where it belong," rather than with a federal parole board, and it permitted "later review of sentences in particularly compelling situations." Notably, Congress imposed no limitations on the Court's authority to make such determinations declining to define what constitutes "extraordinary and compelling reasons" or to otherwise constrain judges' discretion. The mandate was simple: If extraordinary and compelling circumstances were present, they would "justify a reduction of unusually long sentence." S. Rep. No. 98-225, at 55-56

-8-

However where the establish-
ment of the BOP as the gatekeeper
effectively eliminated the safety
valve. The BOP, which is of course
a part of the Department of Justice,
hardly ever opened the gate[4].
As a result, Congress, through the
First Step Act; allowed direct access
to the sentencing Court once an
inmate's request to the BOP has been
exhausted.

2.

The U.S. Sentencing Commission
Has Not Limited "Extraordinary
And Compelling Reason" For
Compassionate Release To Medical,
Age-Related, Or Family Circumst-
ances.

When enacting § 3582(c), Congress
delegated the responsibility for ex-
pounding upon what constitutes
"extraordinary and compelling
reason" to the U.S. Sentencing —

[4].
See, e.g., 'The Answer is No:' Too little
Compassionate Release in U.S. Federal Prisons, Human
Rights Watch, at (Nov. 2012), https://www.hrw.org/sites/def-
ault/files/report/us1112-for upload sm.pdf (noting that
between 1992 and 2012, the annual number of
prisoners who received a compassionate

Commission (the "Commission") See
28 U.S.C §994(t) ("The Commission...
shall describe what should be
considered extraordinary and com-
pelling reasons for sentence reduc-
tion, including the criteria to be
applied and list of specific exam-
ples."); See also 28 U.S.C. §992
(a)(2) of title, (the Commission shall
promulgate general policy state-
ments regarding " the sentence
modification provisions set forth
in section [.]...... 3582 (c) of title
18"). The resulting policy state-
ment by the Commission sets
forth the following factual consid.
oration: (i) the medical condition
of the defendant (including term-
inal illness and other conditions
and impairments); (ii) the age
of the defendant (for those 65 and
older with serious deterioration
related to aging, who have comp-
leted at least 10 years or 75 per-
cent of the term of imprisonment);
(iii) the family circumstances of
the defendant (where a childs
care-giver or spouse dies or becomes

4.
release following a motion by the BOP
was less than two dozen.

-10-

incapacitated without an alternative
caregiver); and (iv) "other reasons"
as determined by the B.O.P. U.S.S.G.
§ 1B1.13, Application Note 1 (A).

The Fourth Category specifically
includes "an extraordinary and
compelling reason other than or in
combination with," the first three.
Additionally, the commentary makes
clear that the extraordinary and
compelling reasons "need not have
been unforeseen at the time of
sentencing in order to warrant a
reduction in the term of impris-
onment." U.S.S.G. § 1B1.13 Applicat-
ion Note 2. In other words, even
if an "extraordinary and compell-
ing reason reasonably could have
been known or anticipated by the
sentencing court, [that fact] does
not preclude consideration for a
[sentence] reduction."

As the above language makes
clear, extraordinary and compelling
reasons for a sentence reduction may
exist even when an inmate is not
elderly, ill or facing complicated
family circumstances.

-11-

And though the Policy statement—
which has not been amended since
the passage of the First Step Act—
vest the Director of the BOP with
the authority to determine when
such "other Reason" might warrant
a reduction in a particular case,
that language is now irreconcilable
with the revised statute, which
permits a defendant to bring a §
3582 motion to the court without
any response from the BOP, or even
if the BOP expressly decides that
no reason warrant a reduction
of sentence.

Accordingly, that aspect of the
commentary is not binding on the
court's for two reasons: (1) the
Guidelines are advisory only, see
United States v. Booker, 543 U.S.
220 (2005); and (2) it is inconsistent
with the text and the undisputed
purpose of the First Step Act, See
United States v. Da-cia Chen 127
F.3d 286, 291 (2nd Cir. 1997). Where
commentary that relates to a stat-
ute, or to a guideline that mirrors
a statute (as here), is not entitled
to deference); See also United States
v. Pierminanzi, 23 F.3d 670, 683 —

-12-

(2nd Cir. 1994).

Indeed, at least three district
Court's since the passage of the First
Step Act, have observed that § 1B1.13
" has not yet been updated to reflect
that defendant's (and not just the BOP)
may move for compassionate release."
United States v. McGraw, No. 2:02-CR-
00018 (LJM)(CMM). 2019 WL 2059488,
at *2 (S.D. Ind. May, 09, 2019, and "[b]e-
cause the current version of the Guide-
line policy statement conflicts with
the First Step Act, the newly-enacted
statutory provision must be given
effect." Cantu-Rivera, 2019 WL 2578-
272 at *2 n. 1; See also Cantu, 2019 WL
2498923, at *4 (Given the changes to
the statute, the policy-statement pro-
vision that was previously applicable
to 18 U.S.C. § 3582 (C)(1)(A) no longer
fits with the statute and thus does
not comply with the congressional
mandate that the policy statement
provision that was previously applic-
able to U.S.C. § 3582 (c) must provide
guidance on the appropriate use of
the sentence modification provision
under § 3582.").

This Courts authority to reduce Petitioner's sentence is not only consistent with the statute, but also with the language in the policy statement, which makes clear that "[T]he Court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction") and if so, the encouraging of the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in [the] Application Note." As mentioned above, in amending the language of 18 U.S.C. § 3582-(c)(1)(A), Congress finally empowered courts to make this critical determination, even in the face of a BOP determination that a defendant's case is not extraordinary or compelling.

Thus, just a few months ago, a district court in Texas, held as follows:

[T]he correct interpretation of § 3582-(c)(1)(A) — based on the text, statutory history and structure, and consideration of Congresse's ability to override any of the Commissions' Policy statements "at anytime" [....] — is that when a defendant brings a motion

-14-

for sentence reduction under the amend-
ed provision, the court can determine
whether any extraordinary and compe-
lling reasons other than those delinea-
ted in U.S.S.G. § 1B1.13 cmt N.1 (A)-(C)
warrant granting relief. Cantu, 2019
WL 2498923, at *5. This court therefore,
may make an independent assessm-
ent of Petitioner's case in considering
whether extraordinary and compelling
reasons warrant the reduction of his
sentence.[5]

## 3.
### Extraordinary And Compelling Circ-umstances Warrant A Reduction In Petitioner's Sentence

Petitioner asserts that there are sev
eral extraordinary and compelling cir-
cumstances which warrant a reduc-
tion in his sentence. Notably the pre-
sent Corona-19 virus epidemic sweeping
the country. Petitioner's age, and under-
lying health issues, Petitioner has hyp-
extension, and will soon be 71 years old

[5] See also Cantu, 2019 WL 2498923, at *4 (Given
the changes to the statute, the policy statement
provision that was previously applicable to 18
U.S.C. § 3582 (c)(1)(A) no longer fits with
the statute and does not comply with the Congre-
ssional mandate.    -15-

In addition Petitioner asserts that
where his status as a "career-offender
/violent offender" places him in a
precarious and disadvantageous pre-
dicament.

Where Petitioner is charged with § 2113-
(a) unarmed bank robbery/via (a note), it
is Petitioner's assertion that in light of
recent changes, rulings and Amendm-
ents in the Law, that his unarmed
bank-robbery conviction should not
be viewed as a "violent crime" especially
in light of the fact the victim-teller
was the least-bit intimidated, whe-
re she did ("literally" grab Petitioner's
hand, and twist it so that she could
obtain a better look at the demand
note, "all captured on video-camera.")

Here Petitioner does not attempt to
minimize his criminal conduct, but
points out by analogy the stark
constrast in conduct of his crime
versus the conduct in other recent

5*
───────────────────────

Cantu-Rivera, 2019 WL 2578272, at *2 n.1 (find
ing authority to determine that defendant was
entitled to relief under the catchall provision
in the commentary to 1B1.13 because the
"current policy statement predate the

-16-

cases.

I.e., See Shelby v. United States (9th
Cir. 18-35515) (In Shelby the court
had to determine if Oregon's First
Degree Robbery was categorically
a crime of violence under the ACCA's
force clause. The district court held
that it was not." The Ninth Circuit
agreed to state that a First Degree
Robbery was really just a third-deg-
ree robbery when the perpetrator is
armed with a deadly weapon." Or
See Johnson v. United States (2015).
Just as Johnson narrowed the scope
of the ACCA. Davis" narrowed the
scope of [§ 924(c)] by interpreting its
term specifically the term [crime of
violence]." See U.S. v. Davis, (The -
Supreme Court's decision in Davis
not only invalidated 924(c)(3)(B)'s
"residual clause," but it also invalid-
ated the "conduct-specific approach"
adopted by many of the lower cour-
ts in the wake of Johnson II-(2015).
(These Courts must now return to the
well established "categorical approa-
ch" when defining a "crime of violence.")
See Dimaya, 138 S.Ct at 1221.

55 cont.

enactment of the First Step Act and is not
likely to be amended within the foresee-
able future due to lack of sufficient num-
ber serving members of the Sentencing-

-17-

Or Consider the Supreme Court's requirement of "violent-force-i.e., force capable of causing physical pain or injury to another person," that statute cannot qualify as a "crime of violence" U.S. v. Johnson, 599 at 134 (2015). Finally in Davis (2019), the Supreme Court chose Robbery as their example of an offense that would have been assessed under the (now invalid) "residual clause" instead of the "elements clause." Holding that Hobbs Act Robbery is Not a "crime of violence" under the "elements clause" of 924(c). Where Section 1951(b)(1)- Interference with Interstate Commerce by Threats or violence (Aka The Hobbs Act), defines "robbery" to mean the unlawful taking or obtaining of personal property from the person, or obtaining of personal property from the person, or in the presence of another, against his/her will, by means of actual or threatened force, of

*5 cont.

commission."); United States v. Beck, No. 1:13-cr-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019 ("while the old policy statement provides helpful guidance it does not constrain the court's independant assessment of whether "extraordinary and compelling reasons' warrant a sentence reduction    -18. - under § 3582 (c)(1)(A)(1) ").

Violence ..... Or fear of injury, immediate, or future to his person or property, or property in his custody or possession or the person or ... Here it's hard to imagine any type of robbery that would not be covered by the Hobbs Act.

Here Petitioner does not attempt to relitigate his case, but simply to point out the inconsistencies in the law.

Petitioner ask this Court to define, or please explain how (a) robbery with (a) "gun," could not be considered a "crime of violence" as opposed to a robbery by (note), clearly without a weapon or threat is considered violent?

Further Petitioner points to Amendment 798, even though not "retroactive," it is Petitioner's assertion that Amendment 798 produces an additional reason pursuant to § 3582 (c)(1)(A)(i) to reduce Petitioner's sentence. (see enclosed print-out). United States v. Frates, 896 F.3d 93 (2018, CA, 1st Cir.) ("An Amendment to the United States Sentencing Guidelines eliminates the residual clause from the 'crime of violence' definition.") ("18 U.S.C. § 2113(a) requires proving

- 19 -

that a threat of bodily harm was
made. Section 2113(e)."[6] In Frates
the defendant was sentenced when
the career offender guideline still
contained the so-called residual
clause"). ("What happens to defen-
dant's, like Frates who were sent-
enced before Johnson, "and "before
Amendment 798 when the career-
offender guideline contained the
problematic residual clause"?)
The First Circuit called this "a pec-
uliar moment in the history of the
sentencing Guidelines" and "a quirk
for defendant's".

   In addition, a motion for relief
under 18 U.S.C. § 3582(c)(1)(A) requir-
es a court to consider other factors
that may warrant relief, including
the defendant's rehabilitation, and
other factors bearing on the person
Petitioner is today. See also Cantu-
Rivera 2019 WL 2578272, at *2.

                    C.

_____
[6] *
Petitioner asserts that there was never a
threat of any type in his crime(s).
                  -20-

C.

## The Criteria For Reassessing The Length Of Petitioner's Sentence Weigh Strongly In Favor Of A Sentence Reduction

In determining whether Petitioner's sentence should be reduced, the Court must decide inter-alia, whether Petitioner presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G § 1B1.13 (a). If not, the court looks to the factors outlined in 18 U.S.C. § 3553 (a).

## 1. Petitioner Is Not a Danger

Petitioner asserts that if he was released, that he would not pose a danger to the community. Petitioner asserts that he does not blame anyone for his incarceration — but himself. Additionally, Petitioner expresses much remorse and shame for his behavior. Petitioner states that where he is almost 71 years-old, and where he has served 8-years of a 13 year sentence. When Petitioner

-21-

committed his crime, no one was physically injured or threatened, as a result of Petitioner's behavior/crime. In fact, a review of Petitioner's criminal history shows that Petitioner has 'never' physically harmed anyone in his life. Nothing in Petitioners' history indicates that he would be a danger if released, or otherwise militates against a sentence reduction requested here.

While in prison, Petitioner has worked hard to better himself, and has participated in numerous hours of educational and wellness courses- participated in the "Challenge Program" a cognitive-behavioral treatment program focused on treating substance abuse and behavioral therapy.

In Contrast, Petitioner asserts that he will be an asset to the community, rather than a fool or a danger. Petitioner states that he now realizes that he has, and has always had the ability to be an asset and a leader in the community. Petitioner states that having spent the last 8-

years in prison, in addition to
having served (2) two prior prison
sentences, Petitioner states that
although he is a bit slow-getting
[i]t, he now gets [i]t. Petitioner
states that he failed to acknowl-
edge or appreciate his natural
God given talents and gifts. That
he never actually paid attention to
the fact that he was gifted-comp-
ared to his fellow prisoner's. Here,
Petitioner does not toot his own
horn, but simply asserts what is
the truth.

   The fact that Petitioner will be an
asset to the community, rather than
a danger, is demonstrated by offe-
rs of employment extended to him,
additionally, Petitioner has tentativ-
ly discussed a collaboration with
several, Bay-Area None-Profits based
in the East-Bay, the Pastor of the
church, and "Endevor Homes-Build-
ers-to form a coalition to add-
ress homelessness.

   [U]tilizing Petitioner's idea of con-
verting decommissioned Box-cars
into livable units of Housing.

- 23 -

(Please see Exhibits # 2-6).

It is Petitioner's assertion that
your Honor, Judge Hamilton, you
are previously aware of this idea,
where I did speak of it in 2013,
prior to sentencing in my case.
It is my assertion that where I,
and I alone possess the passion
and imagination to carry out such
a project. This will allow Petitioner
to give-back to a community, inst-
ead of taking, and will allow Pet-
itioner to redeem himself.

## D.

Petitioner asserts that he has
family and Community support 'both',
for his personal support, and his
plan to help alleviate the homeless
crisis. Where Petitioner's idea is
some what novel in its approach,
can eliminate several-thousand
people from the homeless-role in
a relatively short period of time.

Petitioner states that the time
he has already served is more
than sufficient to acheive the ob-
jectives of his sentence and —

incarceration, including to deter
similar misconduct. Petitioner asserts
that he would like to use his build-
ing skills as a platform to mentor
and assist youth, helping them
to avoid prison and incarceration.

1. Where Petitioner's plan would
involve the entire Community, e.g.,
Social Services; Welfare Department;
E.D.D. (Employment Development Dept;
Fema; Freddy Mac; Fannie Mae;
Big Business, e.g. Home Depot Wal
Mart, Lumber Liquidators, Sherwin
Williams Paint Co.; The City Planning
Commission; the County, Pacific Gas,
and Electric; the Mayor's Governors
office, Southern Pacific Railroad, Co.
CXS, Rail-Road Co, Cisco Systems.
Big Banks, the Church, and many
other Business and Services, just
to name a few. To eliminate the
"homeless" problem its going to take
the nation.

The "Key-Factor" being that:
these 550+ square footage homes,
owner-assisted-built, these homes
will belong to the people, no one
will be able to evict them.

-25-

thereby eliminating homelessness.

Further, where a person is rece-
iving "subsistence", e.g., SSI; SDI;
Welfare; AFDC; Retirement, ones
mortage payment would be based
on a percentage of ones income basis.
Each home costing between 80,000 and
$86,000 dollars, two bedrooms, or
studios for single men, or women.

Where this may sound simplis-
tic and utopian, it is not! Where
a Box-Car is already constructed,
the cost-savings is enormus. It
then becomes a matter of adding
windows, doors, stairs, plumbing,
and naturally the essentials. But
having done so the cost in sav-
ings in terms of human life and
the toll on society, far outweigh
the alternative.

Petitioner states that one (1) Box
Car-home can comfortably support
(2) two single persons, simply by
dividing it in half, or a woman
and two children, e.g., a two bed
room unit complete with full
rear and front poraches, e.g.
(extra living space).
                    -26-

Petitioner makes the following
assertion: That almost any home-
less person would be more than
happy to have a personal space
the size of (this/my cell) 9 x 12,
as long as it was, warm, dry, safe
and afforded peace and quiete, a place
to lock ones door and feel safe.
wherefore, Petitioner begs this
Court to allow him to use his
building talents and skills to help
with the homeless crisis.


## D-1

With the passage of the First
step Act, Congress, emphasized
the imperative of reducing unecess-
ary incarceration and avoiding un-
duly punitive sentences that do
not serve the ends of justice.
<u>United States</u> v. <u>Simons</u>, No. 07-CR-
00874, 2019, WL 1760840, at *8 (E.D.-
N.Y. Apr. 22, 2019). The First step
Act authorizes this Court to re-
duce Petitioner's sentence to a more
just term of imprisonment. Thus,
Petitioner respectfully ask this
Honorable Court to recognize
that Petitioner deserves mercy and
redemption.

-27-

## Conclusion

Congress never intended to per-
mit, let alone to mandate, the
excessive punishment Petitioner
received in this case. Congress
has now given this court the
power to grant Petitioner relief from
that sentence. Petitioner respectfully
request that the Court find that
there exist extraordinary and com-
pelling reasons warranting a
reduction in his sentence, and
reduce Petitioner's sentence accord-
ingly.

Wherefore Petitioner prays for
any relief this Court deems approp-
riate.

04/12/2020          Respectfully submitted

                    Rory land Rice, pro se

cc: file/ Clerk of the Court, U.S. Dist Ct.

28

# EXHIBIT A

before



9.5

9.5

55 Ft

After Conversion

Studio Units - X2







57 ½'

Holds 100 cattle



# First Circuit: Sentencing Courts May Consider New Career Offender Guideline Amendment 798, Even Though Not Retroactive

*by Dale Chappell*

IN A CASE WHERE A DEFENDANT WAS sentenced when the career offender guideline still contained the so-called residual clause, the U.S. Court of Appeals for the First Circuit held that a sentencing court has the discretion to ignore the career offender penalty in light of the United States Sentencing Commission's ("USSC") amendment to the guideline that removed the residual clause, even though the amendment is not retroactive.

When David Frates was sentenced in 2016 in the U.S. District Court for the District of Massachusetts as a career offender based on his four prior Massachusetts unarmed robberies, the district court, relying on circuit precedent, determined that those prior convictions qualify under the career offender guideline's residual clause. Frates was sentenced to 11 years in prison under the residual clause, and he appealed.

The U.S. Supreme Court declared in *Johnson v. United States*, 135 S. Ct. 2551 (2015), that the similar residual clause in the Armed Career Criminal Act ("ACCA") is unconstitutional, sparking a wave of relief in the courts. Prompted by this monumental decision, the USSC adopted Amendment 798 to remove the similar residual clause in the career offender guideline, which went into effect November 1, 2016.

However, the USSC did not make the Amendment retroactive to those sentenced under the guideline prior to the effective date.

Four months after Amendment 798 took effect, the U.S. Supreme Court in *Beckles v. United States*, 137 S. Ct. 886 (2017), "rejected a void-for-vagueness challenge to the crime of violence definition's residual clause," explained the First Circuit. The *Beckles* Court distinguished *Johnson* by explaining that the ACCA "fix[ed] the permissible sentences for criminal offenses," whereas the Guidelines "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." Therefore, because the Guidelines are discretionary, they aren't "amendable to a vagueness challenge," so "§ 4B1.2(a)'s residual clause is not void for vagueness." *Beckles*.

What happens to defendants, like Frates, who were sentenced after *Johnson* but before Amendment 798 when the career offender guideline contained the problematic residual clause?

The First Circuit called this "a peculiar moment in the history of the Sentencing Guidelines" and "a quirk for defendants." First, the Court determined that the district court did not err by sentencing Frates as a career offender under the guideline in effect at the time of his sentencing.

However, because the district court was not aware of Amendment 798, the First Circuit concluded that Frates' sentence should be vacated to allow the district court to consider the USSC's revised policy under the Amendment.

Several factors combined in this case to vacate Frates' sentence, the Court said. The USSC adopted a substantive amendment to a relevant guideline, the amendment was adopted before Frates' sentence became final on appeal, and the amendment would have lowered his sentence had it been in effect at the time of sentencing.

The Court also pointed out that the

Government had conceded that Frates' priors qualified under the residual clause only. This was important because the district court may not recalculate or dig too deep under such a limited remand, the Court said. Instead, the sentencing should be "mechanistic" and not complex. The idea is to allow the district court to simply consider whether it would have imposed the career offender penalty on

Frates had it known about Amendment 798.

"For these reasons, we think it prudent to allow the [district] court the opportunity to consider the Sentencing Commission's updated views," the Court concluded. Accordingly, the First Circuit vacated Frates' career offender sentence and remanded for resentencing consistent with this opinion. See: *United States v. Frates*, 896 F.3d 93 (1st Cir. 2018).

---

**UNITED STATES OF AMERICA, Appellee, v. DAVID A. <u>FRATES</u>, Defendant, Appellant.**
**UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**
**896 F.3d 93; 2018 U.S. App. LEXIS 19853**
**No. 16-1933**
**July 18, 2018, Decided**

---

**Editorial Information: Prior History**

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS. Hon. Richard G. Stearns, U.S. District Judge.

**Counsel**            Ian Gold, on brief for appellant.
                Mark T. Quinlivan, Assistant United States Attorney, and William D. Weinreb, Acting United States Attorney, on brief for appellee.
**Judges:** Before Torruella, Lipez, and Kayatta, Circuit Judges.

**CASE SUMMARY** Although the district court did not err in sentencing defendant as a career offender, the case was remanded to allow the district court to consider the United States Sentencing Commission's revised policy positions, as demonstrated by its subsequent amendment of the United States Sentencing Guidelines.

**OVERVIEW: HOLDINGS:** [1]-The district court did not err in applying the career offender enhancement because both defendant's offense of conviction and his prior Massachusetts unarmed robbery convictions were crimes of violence under the version of U.S. Sentencing Guidelines Manual § 4B1.2(a) applicable at the time of his sentencing; [2]-Although the district court did not err in sentencing defendant, the case was remanded to allow the district court to consider the United States Sentencing Commission's revised policy positions, as demonstrated by its subsequent amendment of the Guidelines.

**OUTCOME:** Sentence vacated. Case remanded.

**LexisNexis Headnotes**

The United States Sentencing Guidelines' career offender enhancement increases the sentencing ranges of certain defendants whose offense of conviction was either a crime of violence or a controlled substance offense, and who have at least two such prior convictions. U.S. Sentencing Guidelines Manual § 4B1.1 (2016).

U.S. Sentencing Guidelines Manual § 4B1.2(a)(1) (2015) is known as the force clause, the segment of subsection (2) listing specific crimes is known as the enumerated offenses clause, and the segment of § 4B1.2(a)(2) beginning with "otherwise involves" is known as the residual clause. The commentary to § 4B1.2 further specified a number of offenses that sentencing courts essentially treated as additional enumerated offenses. U.S. Sentencing Guidelines Manual § 4B1.2, cmt., application n. 1 (2015) (listing, for example: murder, kidnapping, aggravated assault, and robbery).

01CASES                                    1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

